IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Tammy M. Howard, | Case No. 3:13 CV 1301 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| United States of America, | |
| Defendant. | |

### INTRODUCTION

Pending before this Court is Plaintiff Tammy Howard's (d/b/a "American Petroleum #3") Motion to Stay Administrative Action (Doc. 3). The Government has opposed the Motion (Doc. 6), and Plaintiff has filed a reply (Doc. 7). This Court held a record hearing on the pending motion on July 16, 2013, at which time it received evidence on the pending Motion (Doc. 10). For the reasons below, Plaintiff's Motion to Stay is denied.

### BACKGROUND

Plaintiff is the sole proprietor of a gas station and convenience store located at the corner of East Central and Stickney Avenues in Toledo, Ohio (Doc. 1 at ¶ 4). The convenience store was, until recently, authorized to participate in the Supplemental Nutrition Assistance Program ("SNAP") operated by the U.S. Department of Agriculture, Food and Nutrition Services ("FNS"). SNAP provides food assistance to low-income individuals and families. On May 21, 2013, the FNS issued a Final Agency Decision withdrawing Plaintiff's approval as a SNAP retailer (Doc. 1-1).

The FNS cited two state court convictions supporting its decision to terminate: one for attempted trafficking in cigarettes (a second-degree misdemeanor), and another for attempted illegal use of food stamps or WIC program benefits (a first-degree misdemeanor) (Doc. 1-1 at 4). Plaintiff pled "no contest" to both charges (*id.*).

Plaintiff filed the Complaint in this case seeking administrative review of the FNS's withdrawal and asking this Court to vacate the Final Agency Decision. Plaintiff then filed a Motion to Stay Administrative Action, asking this Court to enjoin the FNS from removing Plaintiff as a SNAP participant.

## ANALYSIS

### Standard

Participating food retailers must abide by the rules and regulations governing SNAP. *See* 7 U.S.C. § 2021(a). If a retailer disagrees with a final agency decision regarding its participation in SNAP, the retailer "may obtain judicial review . . . by filing a complaint against the United States in the United States court for the district in which it resides or is engaged in business." 7 U.S.C. § 2023(a)(13).

During the pendency of any such judicial review, 7 U.S.C. § 2023(a)(17) provides that:

> [T]he administrative action under review shall be and remain in full force and effect, unless on application to the court . . . and after hearing thereon and a consideration by the court of the applicant's likelihood of prevailing on the merits and of irreparable injury, the court temporarily stays such administrative action pending disposition of such trial or appeal.

Thus, this Court must assess both the likelihood of Plaintiff prevailing on the merits and the risk of irreparable injury. *See Alkabsh v. United States*, 733 F. Supp. 2d 929, 934 (W.D. Tenn. 2010).

**Likelihood of Success on the Merits**

In order to succeed on the merits when challenging withdrawal of authorization from SNAP, a plaintiff must prove by a preponderance of the evidence that the withdrawal was legally invalid. *Warren v. United States*, 932 F.2d 582, 586 (6th Cir. 1991). To determine whether a withdrawal was invalid, courts must conduct a de novo review and consider: (1) whether there were violations of the federal Food Stamp Act; and (2) whether the withdrawal associated with the violations complied with the authority granted under the law. *Woodard v. United States*, 725 F.2d 1072, 1076 (6th Cir. 1984). If a court determines that there were violations of the Act, all that is left to review is whether the withdrawal complied with the law. *Goldstein v. United States*, 9 F.3d 521, 523 (6th Cir. 1993). If a court then determines that the withdrawal complied with the law, then the inquiry is complete and the withdrawal must be enforced. *Id.*

Section 278.1(l) delineates when the FNS can withdraw a retailer's authorization to participate in the SNAP program. In its decision to permanently withdraw Plaintiff's authorization, the FNS asserted that Plaintiff was in violation of 7 C.F.R. § 278.1(l)(1)(iv), which provides that authorization to participate in SNAP shall be withdrawn when "[t]he firm fails to maintain the necessary business integrity to further the purposes of the program, as specified in paragraph (b)(3) of this section." Paragraph (b)(3)(i) authorizes withdrawal for "[c]onviction of or civil judgment against the owners" for:

> (A) Commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction;
>
> (B) Commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, receiving stolen property, making false claims, or obstruction of justice; or
>
> (C) Violation of Federal, State and/or local consumer protection laws ***or other laws relating to*** alcohol, ***tobacco***, firearms controlled substances, and/or gaming licenses (emphasis added).

3

Section 278.1(k)(3)(i) provides that retailers for whom "records of criminal conviction or civil judgment exist that reflect on the business integrity of owners, officers, or managers as stipulated in § 278.1(b)(3)(i) *shall* be denied authorization *permanently*" (emphasis added).

At the record hearing, the Government entered into evidence Exhibits 3 and 4. Exhibit 3 includes court records from the Toledo Municipal Court for criminal Case No. CRB 10-14397-0101, which reflect that in October 2010, Plaintiff entered a no contest plea to one count of attempted trafficking in cigarettes without a license in violation of R.C. § 5743.15, a second-degree misdemeanor. Exhibit 4 includes three incident reports filed by the Ohio Department of Public Safety against Plaintiff reflecting the results of three different "controlled buys" in January and February 2009 where Plaintiff sold non-food items to confidential informants who paid for the items with food stamps.

As a result of these investigations, Plaintiff was arrested in March 2009 and charged in Case No. 4801-CR-200901807 (Lucas County Court of Common Pleas) with numerous felony counts of illegal use of food stamps (Exhibit 3 at AR 44–51). In August 2009, Plaintiff pled no contest to a lesser charge of attempted illegal use of food stamps or WIC program benefits in violation of R.C. §§ 2923.02(A), 2913.46(B) & (D), a first-degree misdemeanor (Exhibit 3 at AR 48–49). Based on a review of these records, the FNS permanently withdrew Plaintiff's authorization to participate in SNAP, finding that Plaintiff failed to meet the business integrity specifications as set forth in 7 C.F.R. § 278.1(l)(1)(iv) in light of these convictions (*see* Doc. 1-1).

Plaintiff argues the FNS failed to properly review her individual circumstances and that permanent withdrawal of authorization was improper under 7 C.F.R. § 278.6(e) (Doc. 7 at 3–5). During the record hearing, Plaintiff offered explanations about the underlying events leading to her convictions -- that she inadvertently failed to renew her tobacco license with the State and that the sale

4

of non-food items was a one-time incident, done only to help out a sick, elderly customer with no money. Plaintiff contends the FNS should consider these explanations and that "[i]t is reasonably well established that in determining whether to permanently disqualify a retailer for lack of business integrity, the Department of Agriculture is required to look behind what appears on the face of the public record and make an individualized consideration to independently evaluate Plaintiff's business integrity and reputation in light of the purposes of the food stamp program" (*id.* at 3).

In arguing that the FNS must make an individual determination regarding Plaintiff's conduct, Plaintiff relies on *Della Valle v. United States*, 626 F. Supp. 388, 392–93 n.3 (D.R.I. 1986), where the court held that the agency could not base disqualification solely on knowledge of removal from WIC, but was required to make findings of its own regarding the appropriateness of disqualification under the plaintiff's specific circumstances.

In *Della Valle*, the FNS used plaintiff's suspension from the state-administered WIC program as the basis for suspending plaintiff from the food stamp program for a concurrent period of time. *Id.* at 390. While the court did not take issue with the reason for suspension or with the FNS's failure to conduct its own investigation into the alleged WIC violations, it did hold that the regulations required the FNS to make a determination of whether the WIC violations were of a kind that merited suspension from the federal food stamp program. *Id.* at 392–95.

However, courts have repeatedly upheld the FNS's determination that the regulations do not require such an assessment; rather, the regulations require the FNS to act when a retailer fails to meet regulatory specifications. In *Hernandez v. U.S. Dep't of Agric. Food & Consumer Serv.*, 961 F. Supp. 483 (W.D.N.Y. 1997), for example, the court upheld the FNS's sanction when it was based on discovery of a conviction for food stamp fraud, and no individual investigation was undertaken. Furthermore, post-*Della Valle* courts have repeatedly upheld an FNS ordered withdrawal from the

federal program based solely on disqualification from a state-run WIC program without a separate independent assessment. *See J.C.C. Food & Liquors v. United States*, 133 F.3d 555 (7th Cir. 1998); *East Food & Liquor, Inc. v. United States*, 50 F.3d 1405 (7th Cir. 1995); *Davis v. United States*, 847 F. Supp. 120 (E.D. Wis. 1993); *Kim v. United States*, 822 F. Supp. 107 (E.D.N.Y. 1993); *Rahim v. United States*, 805 F. Supp. 676 (E.D. Wis. 1992); *De La Nueces v. United States*, 1992 WL 58851 (S.D. N.Y. 1992); *Landau's, Inc. v. United States*, 1990 WL 68904 (E.D. N.Y. 1990).

In short, Plaintiff argues the FNS is required to retry the convictions obtained in state courts in order to sanction retailers and to consider individualized non-statutory factors. Not so. What the regulations require is that the FNS evaluate the basis of the convictions to determine if they fit within the regulations, give the retailer proper notice and due process, and administer appropriate sanctions as set forth in the regulations. Plaintiff has not cited a failure by the FNS in this regard. Therefore, this Court finds Plaintiff has failed to establish that she is likely to succeed on the merits.

**Irreparable Harm**

Irreparable harm is generally not established by a mere showing of monetary damage. *Basicomputer Corp. v. Scott*, 73 F.2d 507, 511 (6th Cir. 1992). However, loss of a business has been categorized as irreparable harm, because it cannot be fully compensated by money damages. *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995). In *Gurtzweiler v. United States*, 601 F. Supp. 883, 885 (N.D. Ohio 1985), the court held that irreparable harm in a Food Stamp Act case required more than just the expected economic loss of food stamp business. In order to establish a likelihood of irreparable harm, a plaintiff must demonstrate that there is a more than a speculative chance of harm beyond mere monetary damages associated with the loss of food stamp business. *Id.* In *Alkabsh*, 733 F. Supp. 2d at 938, for example, the court found that, despite evidence presented by the plaintiff that he would be forced to close if a stay were denied, the

6

fact that the store had remained open for five months with the sanction imposed prevented a finding of likelihood of irreparable harm.

Here, Plaintiff claims that, given the convenience store's location in a low-income inner city neighborhood, approximately 30% of her non-gasoline sales comes from food stamp business (Doc. 7 at 6; *see also* Exhibit 2). Plaintiff claims that "[i]f her business is unable to accept food stamps, Plaintiff cannot stay in business for very long" (Doc. 3 at 3) and that this is so because the gross profit margin on gasoline is only about 2%, while the gross profit margin on non-gasoline sales is about 33% (Doc. 7 at 6). She also points out that if she ultimately succeeds in this action, she is statutorily precluded from recouping sales lost in the interim. *See* 7 U.S.C. § 2023(a)(18) ("If the disqualification is reversed through administrative or judicial review, the Secretary shall not be liable for the value of any sales lost during the disqualification period.").

This Court heard testimony from Plaintiff regarding the economic hardship imposed by the ban from SNAP and reviewed exhibits entered into evidence at the hearing (Exhibits 1 & 2), as well as additional exhibits provided by Plaintiff after the hearing (Doc. 11, Exhibits 5 & 6) regarding the overall revenue and expenses generated by Plaintiff's gas station and convenience store.

While Plaintiff has established that she will suffer some economic loss as a result of this sanction, she has not established that such loss will be fatal to the business. *See Gurtzweiler*, 601 F. Supp. at 885 ("If a showing of economic loss was sufficient to invoke a stay under 7 U.S.C. § 2023, . . . the issuance of a stay would be automatic."). This Court notes that Plaintiff has continued to operate her business for nearly two months after the sanction went into effect. Further, the financial summary documents provided to this Court do not establish what portion of Plaintiff's monthly food sales are attributable to SNAP, only calculating total food sales (*see* Exhibits 5–6). Under these facts,

7

this Court finds Plaintiff has not demonstrated a likelihood of suffering irreparable harm absent injunctive relief.

## CONCLUSION

Based upon the foregoing, this Court finds that injunctive relief is not warranted and denies Plaintiff's Motion to Stay Administrative Action (Doc. 3).

IT IS SO ORDERED.

                                                 s/ *Jack Zouhary*
                                                JACK ZOUHARY
                                                U. S. DISTRICT JUDGE

August 7, 2013